Good morning, Your Honors. May it please the Court, my name is Tammy Sirigliano, Counsel for Appellant Van Wagenen. Over to my right is Co-Counsel Mary Lehman. Your Honors, I'd like at this time, with your permission, to reserve two minutes for rebuttal. Your Honors, this case is about sex and power, and ultimately whether the law will protect an employee who's been coerced to submit to sexual demands in order to retain her employment. The trial court answered no to that question. But the trial court's ruling is wrong for two reasons. First, the trial court applied the wrong legal standard. Second, even if the trial court applied the right legal standard in applying McDonnell-Douglas to employee submission cases, it did so erroneously as a matter of law, and therefore must be reversed. To begin, Your Honors, it is a matter of clear law that where a supervisor uses his authority to coerce an employee to submit to unwelcome sexual demands as a condition of her employment, that is archetypical quid pro quo sexual harassment. As a problem, as I see it, is that neither the pretrial order nor the theory of the case involved a Nichols-Hawley-Dee type situation. So I don't quite see how on appeal it can now be argued that the court got it wrong by going the McDonnell-Douglas route rather than the Nichols route. Well, Your Honor, Nichols v. Frank was decided in 1994. I'm not saying that Nichols didn't exist. Of course, Nichols wasn't Hawley. Right. But even assuming Hawley was on the books, my point is that neither the pretrial order or the theory of defense and indeed answers to interrogatories explicitly stated that the only theory upon which the plaintiff was proceeding was for her termination and or failure to be reassigned. Well, indeed, the pretrial order did state that it was a quid pro quo sexual harassment case. Well, but only because of the termination and the assignment, not on the Nichols-Hawley theory, which is that the sexual quid pro quo is itself an adverse employment action. That's that theory. That wasn't your trial theory, was it? Well, Your Honor, I would submit that during trial, the actual issue did originate with Mr. O'Reilly's coercion of Ms. Van Wagenen, and that laid the foundation for the entire case. Sure, no question. And the entire theory was based on had that not occurred, the ensuing acts which resulted in her ultimate termination would not have happened. And that was the theory from the beginning, and that was stated plainly in the facts in the pretrial order, which brings me to another point which you raised in your question. The reason that McDonnell Douglas cannot apply to this case on its facts is not only is it not legally supported because McDonnell Douglas has not been applied in a situation where an employee has submitted to the quid pro quo threat, but in addition, there's a logical dead end. Yes, but see, the problem is suppose she did submit to it. If the only theory is that she was not reassigned or was terminated because of it, and you have a trial and the district judge says, I don't believe that O'Reilly had anything to do with her termination, where are you? Well, that leads me actually to my second point. If McDonnell Douglas were to apply, the trial court reached its conclusions by erroneously, as a matter of law, misplacing its focus in the McDonnell Douglas analysis. Under Diaz v. American Telephone and Telegraph, this court ruled that when a court goes into a McDonnell Douglas analysis, the proper focus is on the employee who has been harmed, not on what happens to a coworker. When you look at the trial court's findings of the trial court said, look, I believe there's a, sorry, Colthais? Colthais. Colthais's version of what happened. And I believe she made the decision and I believe that she decided to extend the appointment of Ramirez instead of your client for a totally valid reason. Well, Your Honor, indeed, the trial court did state that it believed Donna Colthais's testimony. However, the trial court also wholesale ignored a plethora of evidence offered by Appellant Van Wagner, including conversations that Ms. Colthais did have with the entire staff of the office. What do you mean ignored? Made absolutely no mention of, Your Honor. Was that information and evidence before the trial court? Yes, it was, Your Honor. That happens all the time. I mean, you don't have to babble, excuse me, through every bit of evidence in the case. You've got an ultimate conclusion here. And we hear this all the time. The trial court ignored because it didn't mention something. The evidence was there. The trial court gave us the trial court's decision. It doesn't mean it ignored the evidence. Yes, Your Honor. However, the trial court also pretty much relied its conclusion on wholly contradictory evidence that's irrelevant to the real issue here. Did your client say at some point that she didn't want to compete for the job with Ramirez? The phrase that you're referring to is they didn't want to have to compete, which was hotly contested at trial and which was mentioned in the. And that's resolved. Well. Wasn't this case cast in its own skin when we sent it back to determine whether this was pretextual? I mean, it was kind of trapped in this context, and that's exactly what the trial court did. This still ignores the issue that Ms. Van Wagnon had to submit to unwelcome sexual demands, which the trial court did conclude, as a condition of her employment. And that runs totally counter to the spirit of Title VII. But I keep coming back to the point that your answers to interrogatories and the pretrial order and the theory of trial was that that caused her not to be assigned and to be terminated. That was the theory. Yes, Your Honor. Not that that in and of itself was an adverse employment action. That wasn't tried. Yes, Your Honor. And when the trial court analyzed the decision to exclude Ms. Van Wagnon from the TPS duties, for example, in December 1990, the trial court focused on this direct chain of command theory that was so attenuated it actually missed the whole point, that Mr. O'Reilly, certainly, yes, he was not the direct, like, on-the-floor shift supervisor. He was the head of the department. He was at the top of the ladder. And that power is even more powerful than, for example, the shift supervisor who works the night shifts, such as in Nichols. That power in and of itself is coercive. However, there was more than that, which the trial court did also note in its conclusions of law and fact, that Mr. O'Reilly affirmatively flexed his power by bragging about his ability to be able to demote someone by reducing their performance evaluations at a whim. It was within the context of that conversation that he then began with his sexual demands. And, yes, the court ultimately concluded, based on, you brought up, Your Honor, the statement, don't want to have to compete. Ultimately, the trial court concluded that that meant, I don't want a job. And that is logically incoherent. As Your Honors can understand, I don't want to have to compete does not mean I don't want my job. It was simply an expression of respect for another coworker and indicating that they did not, that my client did not want to enter into any kind of a supposed catfight. It doesn't mean that when you have to, when pressed against the wall, you won't. It means it's just a preference, that if you're able to get through on merit alone, that that will suffice. Now you're arguing what evidence means, and that was resolved on remand, and we sent it back. Van Wagenen raised a genuine issue of material fact by providing sufficient evidence to show that factual questions existed regarding the defendant's reason for not selecting Van Wagenen for the job extension. And that's why it was sent back. And that's what was determined. Yes, Your Honor. However, looking at the findings of facts and conclusions of law, the trial court's conclusions simply don't make sense with the evidence that it recites. It relies, for example, it makes the conclusion that Mr. O'Reilly was not responsible for any decision based on two pieces of testimony from two witnesses, neither of whom admit to having made the decision, neither of whom admit to having known what occurred. Your Honors, with your permission, may I briefly conclude? I see I'm running out of time. Sure. In conclusion, Your Honors, this falls at the heart of sexual harassment, that my client should be protected under the law, because that's what Title VII in the sexual harassment context is meant to do. Thank you, Your Honors. May it please the Court. I'm Assistant United States Attorney Robbie Montalioni. I represent the defendant Appali, the Attorney General of the United States. Ms. Van Wagenen had a trial on the merits of her only cognizable claim, the claim that the termination of her temporary employment was quid pro quo sexual harassment. Ms. Van Wagenen's supervisor, Donna Coltus, testified at trial that she and she alone made the decision, and she made the decision because she believed, rightly or wrongly, that Ms. Van Wagenen did not want the extension under the existing conditions. The trial court found that Ms. Coltus's testimony was credible. That finding, that Ms. Coltus made the decision, and she made it for a reason which was not prohibited under Title VII, is dispositive of the case. That finding alone is enough basis to uphold the trial court's decision. The finding of fact was not clearly erroneous, and therefore the decision of the trial court that Ms. Van Wagenen was not subjected to quid pro termination must be affirmed. If the court has any further questions on other issues, I'd be happy to answer them. No, thank you. Thank you. You can respond if you care to. Your Honors, I only have one brief rebuttal point. This is not a new case that Appellant Van Wagenen is bringing before this Court. It's the same facts, the same story that went through full litigation and that went through all the pretrial discovery and briefing. This is indeed, if you want to see it as a new issue, there is new law that provides for the correct application and protection of these types of situations. Thank you, Your Honors. Just the point I made earlier, for 17 years I've been hearing lawyers say that trial court ignored this and ignored that because it wasn't mentioned. Well, you know, and almost always you find something like this. The judge said, having considered all the evidence presented at trial.  It's awfully hard to convince an appellate court that that's a lie. Absolutely. Absolutely, Your Honor. And, again, I would submit that there was no legal support, nor was it logically coherent to be able to apply the McDonnell-Beglis test in the way in which the trial court applied it. Thank you, Counsel. Thank you. The case just argued as ordered and submitted.
judges: Trott, Rymer, Thomas